UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOEMAINE B. o/b/o J.B.,

                 Plaintiff,

       v.

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

_____

**DECISION AND ORDER**

1:21-CV-00006 EAW

## INTRODUCTION

Represented by counsel, Plaintiff Joemaine B. ("Plaintiff") brings this action on behalf of J.B., a minor child, pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for children's supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 7; Dkt. 8), and Plaintiff's reply (Dkt. 10).

For the reasons discussed below, Plaintiff's motion (Dkt. 7) is granted to the extent that the matter is remanded for further administrative proceedings, and the Commissioner's motion (Dkt. 8) is denied.

## BACKGROUND

On July 3, 2018, Plaintiff filed an application for SSI on behalf of J.B., a child under the age of 18. (Dkt. 6 at 24, 151-61).[1] Plaintiff alleged J.B.'s disability began on June 27, 2017. (*Id.* at 24, 152). Plaintiff's application was initially denied on August 23, 2018. (*Id.* at 24, 79-90). On May 11, 2020, Plaintiff and J.B. appeared at a telephone hearing before administrative law judge ("ALJ") Matthew Kuperstein. (*Id.* at 37-65). On July 27, 2020, the ALJ issued an unfavorable decision. (*Id.* at 24-32). Plaintiff requested review by the Appeals Council, which was denied on November 5, 2020, making the ALJ's determination the final decision of the Commissioner. (*Id.* at 5-10). This action followed.

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)

---

[1]     When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

(quotation omitted).   It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).   However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   <u>Disability Determination</u>

To qualify as disabled under the Act, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 1382c(a)(3)(C)(i).   An ALJ follows a three-step sequential evaluation to determine whether a child is entitled to SSI benefits.   *Encarnacion ex rel. George v. Astrue*, 568 F.3d 72, 75 (2d Cir. 2009).   "First, the child must not be engaged in 'substantial gainful activity.'   Second, the child 'must have a medically determinable impairment(s)' that is 'severe' in that it causes 'more than minimal functional limitations.'   Third, the child's impairment or combination of impairments must medically or functionally equal an impairment listed in an appendix to the regulations."   *Id*. (quoting 20 C.F.R. § 416.924).

The limitations caused by a child's severe impairment are evaluated pursuant to six domains of functioning: (1) acquiring and using information; (2) attending and completing

tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself, and (6) health and physical well-being.  *See* 20 C.F.R. § 416.926a(b)(1).  "For a child's impairment to functionally equal a listed impairment, the impairment must 'result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain.'"  *Encarnacion*, 568 F.3d at 75 (quoting 20 C.F.R. § 416.926a(a)).  "A marked limitation is more than moderate but less than extreme and interferes seriously with a child's ability to independently initiate, sustain, or complete activities.  An extreme limitation is more than marked and interferes very seriously with a child's ability to independently initiate, sustain, or complete activities."  *Id.* (internal quotations and citations omitted).

## DISCUSSION

### I.   The ALJ's Decision

In determining whether J.B. was disabled, the ALJ applied the three-step sequential evaluation set forth in 20 C.F.R. § 416.924.  Initially, the ALJ determined that J.B. was a school-age child on July 3, 2018, the date the application was filed, and on the date of the written determination.  (Dkt. 6 at 25).  At step one, the ALJ determined that J.B. had not engaged in substantial gainful activity since July 3, 2018, the application date.  (*Id.*).

At step two, the ALJ found that J.B. suffered from the severe impairments of: attention deficit hyperactivity disorder (ADHD), and adjustment disorder with depressed mood.  (*Id.*).  The ALJ further found that Plaintiff's medically determinable impairment of anxiety disorder was non-severe.  (*Id.*).

At step three, the ALJ found that J.B. did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing.  (*Id*. at 26).  Similarly, the ALJ found that J.B. did not have an impairment or combination of impairments that functionally equaled the severity of the Listings.  (*Id*.).  In making this determination, the ALJ considered J.B.'s functioning in each of the above-mentioned six domains and concluded that J.B. had a marked limitation in the area of interacting and relating with others, and less than marked limitations in acquiring and using information and attending and completing tasks.  The ALJ further found that J.B. had no limitation in moving about and manipulating objects, caring for himself, and health and physical well-being.  (*Id*. at 27-28).  Accordingly, the ALJ found that J.B. was not disabled as defined in the Act.  (*Id*. at 32).

## II.   <u>Remand for Further Administrative Proceedings is Required</u>

Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner for further proceedings, arguing that that ALJ erred by: (1) relying on stale opinions; (2) failing to consider the effects of J.B.'s placement in a structured setting on his functioning; (3) neglecting to compare J.B.'s functioning to that of his peers; and (4) incorrectly evaluating education records.  The Commissioner contends that substantial evidence supports the ALJ's determinations.  For the following reasons, remand for further administrative proceedings is required.

"An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision."  *Dana F. o/b/o O.E.H. v. Berryhill*, No 6:18-CV-1337 (ATB), 2019 WL

7067060, at *3 (N.D.N.Y. Dec. 23, 2019).  In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  Further, while "[a]n ALJ is not required to explicitly analyze every piece of conflicting evidence in the record . . . the ALJ cannot 'pick and choose' evidence in the record that supports his conclusions." *Stacy D. v. Comm'r of Soc. Sec.*, 358 F. Supp. 3d 197, 202 (N.D.N.Y. 2019) (internal quotations and citation omitted).  In the context of child disability proceedings, "[w]hen reviewing a child's impairments for functional equivalence, adjudicators must consider all of the relevant evidence, and employ a 'whole child' approach." *Nivia D. o/b/o P.L.D. v. Comm'r of Soc. Sec.,* No. 5:18-cv-0634(TWD), 2019 WL 4573262, at *4 (N.D.N.Y. Sept. 20, 2019) (internal quotations and citation omitted).  This approach "requires the ALJ to consider a child's everyday activities, determine all domains involved in performing them, consider whether that child's medically determinable impairment accounts for limitations in activities, and determine what degree such impairment limits that child's ability to function age-appropriately in each domain." *Id.*

At the hearing, Plaintiff testified that J.B. had been expelled from his regular district school for behavioral issues and was attending Red Jacket Education Center, a "special education school for children with learning disabilities or behavioral issues." (*Id.* at 54, 55).  School records from September of 2019 reflect J.B.'s continued placement in the social skills development program at Red Jacket with a student-teacher ratio of 6:1+1 and additional weekly counseling.  (*Id.* at 337).  J.B.'s February 25, 2020 Individualized Education Program (IEP) reflect his continued enrollment at Red Jacket and receipt of the

full day 6:1+1 social skills development program and weekly counseling. (*Id.* at 305). The IEP reflects that:

> [J.B.] needs a highly structured classroom with clear and consistent expectations. [J.B.] needs a program with use of therapeutic crisis intervention, use of a support room, and use of a timeout room (for emergency purposes only). [J.B.] needs advanced warning of any changes. He needs to take breaks when he is frustrated, and to have access to preferred staff when he needs to talk. [J.B.] needs refocusing prompts and redirections when he becomes distracted.

(*Id.* at 304).

In determining that J.B. did not have either "marked" limitations in two domains of functioning or an "extreme" limitation in one domain of functioning, the ALJ considered the opinions of Tiffany Scull, J.B.'s third grade special education teacher; Todd Deneen, Psy.D., consultative examiner; and T. Harding, Ph.D., the state agency psychologist.

Ms. Scull completed a teacher questionnaire on July 10, 2018, two months after J.B. started at Red Jacket Education Center, where she taught. (Dkt. 6 at 198-205). She indicated that she had worked with J.B. five days a week for six hours a day. (*Id.* at 198). She opined that he had no problem or a slight problem in acquiring and using information, noting that his behaviors impede his learning but once settled in, he is able to show his academic skills. (*Id.* at 199). Ms. Scull noted that at the school he attends, there is a 6:1+1 ratio, "which allows [J.B.] to have extra support if he needs it." (*Id.*). She indicated that most of J.B.'s issues were determined by the mood he was in on a given day. (*Id.* at 200). She noted greater difficulties for J.B. in interacting and relating with others, and his ability to be independent was dependent on his mood and willingness to be a team player. (*Id.* at 201). Ms. Scull opined that J.B. had no problems moving about and manipulating objects

(*id.* at 202) but had a more obvious or serious problem in caring for himself (*id.* at 203).

She indicated that J.B.'s ability to use coping skills to settle himself was also affected by

whether he had taken his morning medication.  (*Id.*).  In conclusion, Ms. Scull mentioned

a conversation with J.B. where she explained to him that if he worked on his behaviors and

coping skills, he could return to his district school.  (*Id.* at 205).  After he expressed not

wanting to go back to his prior school, she noted her belief that "[Red Jacket] is a

comfortable place where he feels safe and respected" and "enjoys the small classroom size

and support he receives throughout the day." (*Id.*).

The ALJ explained his assessment of Ms. Scull's questionnaire as follows:

> The undersigned has considered the teacher questionnaire by the claimant's
> third grade teacher, Tiffany Scull.  (Exhibit 5E).  The undersigned finds that
> this opinion is somewhat persuasive.  Although she is not an acceptable
> medical source, she worked with the claimant for two months, six hours per
> day, five days per week.  She indicated that the claimant would have some
> difficulty learning but, once he settled in, he was able to show his academic
> skills. (Exhibit 5E at 4). She indicated that most of the claimant's issues with
> learnings were dependent on his mood. (Exhibit 5E at 5).  She indicated that,
> when the claimant is taking his medication, he is able to focus and maintain
> his frustrations and emotions. (Exhibit 5E at 9).  The undersigned finds that
> this opinion is generally supported and consistent with the other decisional
> conclusions related to the claimant's functional domains. (Exhibit 2A).

(*Id.* at 31).

The ALJ also addressed the August 13, 2018 opinion of Dr. Deneen.[2]  (*Id.* at 546-

50).  Dr. Deneen noted that J.B. is in special education and has an IEP and diagnoses of

major depressive disorder, oppositional defiant disorder, ADHD, and rule-out post

traumatic stress disorder.  (*Id.* at 546, 549).  Dr. Deneen opined that J.B. would have mild

---

[2]     The ALJ appears to have inadvertently transposed Dr. Deneen's first and last name.
Because this error has no effect on the outcome, it is harmless.

limitations in an ability to "[a]ttend to, follow, and understand age-appropriate directions, sustain concentration and complete age-appropriate tasks, learn in accordance to cognitive functioning, and ask questions and request assistance in an age-appropriate manner." (*Id.*). He opined that J.B. would have moderate limitations in an ability to "[a]dequately maintain appropriate social behavior, respond appropriately to changes in the environment, be aware of danger and take needed precautions, interact adequately with peers, and interact adequately with adults." (*Id.*).

> The ALJ explained his assessment of Dr. Deneen's opinions as follows:
>
> The undersigned has considered the findings of consultative examiner Deneen Todd, Psy.D., who indicated that the claimant's psychiatric and cognitive problems might significantly interfere with the claimant's ability to function on a daily basis. (Exhibit 4F at 5). The undersigned finds that this opinion is somewhat persuasive but has considered that Dr. Todd formulated her opinion based on a one-time examination. Further, her opinion regarding the claimant's functioning is vague. However, the claimant's difficulties maintaining appropriate social behavior is well supported in the record and consistent with Dr. Todd's opinion as well as the opinion of the State agency psychologist. (Exhibit 2A).

(*Id.* at 31).

The ALJ also considered the August 22, 2018 opinion of the state agency psychologist, Dr. Harding. (*Id.* at 67-77). Dr. Harding opined that J.B. had less than marked limitations in acquiring and using information and attending and completing tasks, marked limitations in interacting and relating with others, and no limitations in moving

about and manipulating objects, caring for himself, and in health and physical well-being.

(*Id.* at 72-73).

> The ALJ described his assessment of Dr. Harding's opinions in his decision:
>
> The undersigned has considered the opinion of the State agency psychologist's severity assessment from the initial level determination and finds that it is persuasive, because the level of ongoing severity during the period at issue are supported by and consistent with the objective medical evidence of record when they were made and has remained consistent with the medical treatment notes and school records submitted into the medical record as a whole since they were made. (Exhibit 2A). Specifically, the fourth quarter report card for the 2019/2020 AY shows that the claimant was passing language arts, math, physical education, science, and social studies (Exhibit 17E at 1). The third quarter marking period report for 2019/2020 shows that the claimant was having some difficulty in science and social studies. (Exhibit 17E at 2). In 2018, the claimant's report card reflects that he had passed his subjects. (Exhibit 17E at 3). The claimant's 2017-2018 report card shows that the claimant did well in integrated fine arts, mathematics, social studies, physical education and English. (Exhibit 6E at 2).

(Dkt. 6 at 31-32).

Plaintiff argues that throughout this discussion, the ALJ failed to consider the effect of J.B.'s highly structured setting at Red Jacket Education Center and the numerous supports provided when evaluating his functioning and weighing the evidence before him. The Court agrees.

Social Security regulations require an ALJ to consider a claimant's supportive settings when evaluating the child's ability to function. *See* 20 C.F.R. § 416.924a(b)(5)(iv). "While an ALJ need not make explicit reference to the effects of a structured or supportive setting to be deemed to have considered them, . . . remand may be appropriate if it is evident that the ALJ did not consider this factor." *Sarah H. o/b/o D.R. v. Comm'r of Soc. Sec.*, No. 20-CV-1736-FPG, 2023 WL 2445333, at *3 (W.D.N.Y. Mar. 10, 2023) (quotation and

citation omitted); *see also Smith ex rel. M.M.S. v. Comm'r of Soc. Sec.*, No. 16-CV-362-FPG, 2017 WL 3404760, at \*5 (W.D.N.Y. Aug. 9, 2017) ("Furthermore, it is not apparent if the ALJ considered whether M.M.S.'s performance on these tests was due to her special education accommodations.  Although the ALJ need not make explicit reference to the effects of a structured or supportive setting, the SSA's regulations require the ALJ to consider the effects of structured or supportive settings on a child's ability to function normally." (quotation and citation omitted)).

In *Appleberry o/b/o R.A. v. Comm'r of Soc. Sec.,* No. 6:18-CV-6237, 2019 WL 4929828 (W.D.N.Y. Oct. 7, 2019), the Court explained the importance of this analysis:

> When a claimant is in a structured educational setting, the ALJ must evaluate the effect of that setting on the claimant.  20 C.F.R. § 416.924a(b)(5)(iv)(C).  Because such a setting "may minimize signs and symptoms of [the claimant's] impairment(s)," the ALJ must "consider [the claimant's] need for a structured setting and the degree of limitation in functioning [he or she has] or would have outside the structured setting."  *Id.*  "Even if [the claimant is] able to function adequately in the structured or supportive setting, [the ALJ] must consider how [the claimant] function[s] in other settings and whether [the claimant] would continue to function at an adequate level without the structured or supportive setting." *Id.*

*Id.* at \*6.  In *Appleberry*, the child was "in a self-contained special education classroom, which was classified as "Other Health Impaired" and had a student-teacher ratio of 15-1," and received a number of accommodations for testing, seating, directions, and movement. *Id.*  But because the ALJ "made 'no effort to determine whether [the child] can 'function independently, appropriately, and effectively in an age-appropriate manner outside of [a] highly structured setting," remand was warranted.  *Id.* (citations and quotations omitted).

Here, as noted, Plaintiff was removed from a regular school setting and enrolled in a special education school that provided substantial structure and support to J.B.  In

assessing J.B.'s functioning in the six domains, the ALJ never mentioned the highly structured setting where J.B. attended school or the role it played in allowing him to function adequately.  Nor did the ALJ address the structured setting when considering the medical opinion evidence he relied upon.  By not specifically speaking to the structured and supportive setting where J.B. attended school and its effect on the level of functioning J.B. achieved in the six domains, the decision lacks any perspective as to whether J.B. would continue to function at an adequate level without the structured or supportive setting, as required.

Because of these deficiencies, the Court is unable to find that the ALJ's determination is based on substantial evidence.  *See Tonya B. o/b/o A.M.C. v. Comm'r of Soc. Sec.,* No. 5:21-CV-00787, 2022 WL 4616971, at *13 (N.D.N.Y. Sept. 30, 2022) ("[W]hile the regulations only require an ALJ to consider, not necessarily discuss, the effects of a structured setting, . . . the ALJ did not specifically analyze the effects of Claimant's progressively increased structure setting on her ability to function or how she would function outside of such structured setting.  Furthermore, a court 'cannot . . . conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered.'" (quotations and citations omitted)); *Borrero o/b/o J.L.Q. v. Saul*, No. 18-CV-964-MJR, 2020 WL 2465313, at *3 (W.D.N.Y. May 13, 2020) ("Here, the ALJ provided no discussion of the additional structure or support provided by the IEP, nor did she evaluate how J.L.Q. would function without that additional structure or support.  Failure to engage in this analysis was legal error which requires remand."); *Appleberry* 2019 WL 4929828,

at *7 ("The ALJ's failure to evaluate R.A.'s ability to function outside his structured special education classroom was legal error."); *Bonet ex rel. T.B. v. Colvin, No.* 1:13-CV-924, 2015 WL 729707, at *5 (N.D.N.Y. Feb. 18, 2015) ("Since the statute expressly states that because children may be more impaired in their overall ability to function in an age-appropriate manner than their symptoms and signs would indicate, the ALJ *must* consider the ability to function independently, appropriately, and effectively in an age-appropriate manner outside of [a] highly structured setting." (quotations and citations omitted)). Accordingly, remand is warranted.

## III.    Plaintiff's Remaining Arguments

As set forth above, Plaintiff has identified additional reasons why he contends the ALJ's decision was not supported by substantial evidence.  However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach these issues. *See, e.g., Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); *Morales v. Colvin*, No. 13cv06844 (LGS) (DF), 2015 WL 13774790, at *23 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), *adopted*, 2015 WL 2137776 (S.D.N.Y. May 4, 2015).

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 7) is granted to the extent that the matter is remanded for further administrative proceedings, and the Commissioner's motion for judgment on the pleadings (Dkt. 8) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.


ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:  March 29, 2023
        Rochester, New York